AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☐ Original ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
10/19/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: DVE DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
Oct 19, 2026
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY Nancy Boehme
Deputy Clerk, U.S. District Court

United States of America,

Plaintiff,

v.

VICTOR FLORES-AROCHI, aka "Juan Javier Gonzalez", aka "Victor Torres",

Defendant.

Case No. 8:26-mj-00646-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 18, 2026, in the County of Orange, in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation or Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Thomas Ferguson, Deportation Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 19, 2026

*Judge's signature*

City and state: Santa Ana, California

The Hon. Douglas F. McCormick, U.S. Magistrate Judge
*Printed name and title*

AUSA: Samuel D. Baucom (x 0509)

# AFFIDAVIT

I, Thomas Ferguson, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for VICTOR FLORES-AROCHI, also known as ("aka") "Juan Javier Gonzalez", aka "Victor Torres" ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF TASK FORCE OFFICER THOMAS FERGUSON

3. I am a Deportation Officer ("DO") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") in Los Angeles, California, and have been so employed since May 2018. I am currently assigned to Homeland Security Investigations ("HSI") Integrated Operations Group Task Force (the "Task Force"), as a Task Force Officer ("TFO"). Prior to

my current position, I have received extensive training in immigration and customs law and have participated in investigations involving these violations. I have received additional training in the areas of arrest procedures, execution of searches and seizures, and various other criminal laws and procedures.

4. During my time with the Task Force, and prior assignments, I have investigated a wide range of criminal investigations and assisted other agents in doing so, including, but not limited to, transnational criminal organizations, immigration violations, counterfeit documents, identity theft, human smuggling and trafficking, drug trafficking and counterfeit goods. These investigations have involved investigative interviews, physical surveillance, and immigration records, the execution of search warrants on cars and residences, and the review of evidence from digital devices.

## III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

5. Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

a. Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints. In many cases,

DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b. Moreover, when a person is fingerprinted by DHS agencies, such as ICE, those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file"). An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage. That A-file is maintained in DHS custody, and documents and/or information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

6. Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process. That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number. A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records,

including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. STATEMENT OF PROBABLE CAUSE

7. On or about October 18, 2026, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that, on the same date, he was arrested by the Orange County Sheriff's Department ("OCSD"), in Orange County, within the Central District of California, for the offense of Possession of Controlled Substance in violation of California Health and Safety Code 11377(a) and Possession of Marijuana over 1 ounce/28.5 grams in violation of California Health and Safety Code 11357(b).

8. Defendant is currently in custody with the OCSD. Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly in light of his prior removal history and unlawful reentry. Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance. Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

9. I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices. I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

10. On or about October 19, 2026, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated with defendant's unique fingerprint identifiers that are contained in DHS indices. I learned the following about defendant's immigration history:

a. Defendant is a citizen and national of Mexico.

b. On or about August 1, 2001, defendant was ordered removed from the United States to Mexico. On or about August 2, 2001, defendant was physically removed from the United States to Mexico.

c. On or about August 5, 2010, defendant was ordered removed from the United States to Mexico. On or about August 5, 2010, defendant was physically removed from the United States to Mexico.

d. There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal. Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record

reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

## V. CONCLUSION

11. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 19th day of October 2026.

THE HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE